**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHWESTERN DIVISION**

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| Plaintiff, | ) | **ORDER DENYING DEFENDANT'S** |
| | ) | **MOTION TO SUPPRESS EVIDENCE** |
| vs. | ) | |
| | ) | Case No. 1:11-cr-016 |
| Richard Chandler Black Cloud, | ) | |
| | ) | |
| Defendant. | ) | |

___

Before the Court is the Defendant's Motion to Suppress Evidence filed on April 19, 2011. See Docket No. 25.  The Government filed a response in opposition to the motion on May 2, 2011. See Docket No. 28.  An evidentiary hearing was held on May 24, 2011 in Bismarck, North Dakota. The Court denies the motion for the reasons set forth below.

**I.    BACKGROUND**

On January 20, 2011, a criminal complaint was filed charging the defendant, Richard Chandler Black Cloud, with one count of sexual abuse of a minor. See Docket No. 1. An indictment was subsequently issued on February 23, 2011. See Docket No. 16. The indictment alleges that Black Cloud:

> knowingly engaged in a sexual act with another person, namely C.I.B., who had attained the age of twelve (12) years, but who had not attained the age of sixteen (16) years, and who was at least four (4) years younger than RICHARD CHANDLER BLACK CLOUD, and the sexual act consisted of contact between the penis and the vulva.

See Docket No. 16 (capitals in original). In the affidavit supporting the complaint, FBI Special Agent Francis Gasper describes his interview of Black Cloud:

> On 01/19/2011, BLACK CLOUD was interview[ed] by SA GASPER. During the interview, BLACK CLOUD stated during the summer of 2009 C.I.B. brought him to C.I.B.'s mother's house in Cannonball, North Dakota. BLACK CLOUD had been drinking that evening and went to the house after he had a fight at another location in Cannonball. BLACK CLOUD went on to state that C.I.B. wanted to have sex with him. BLACK CLOUD stated that C.I.B. took her pants and underwear off, and she unbuttoned BLACK CLOUD's pants. BLACK CLOUD then stated that C.I.B. put a condom on his erect penis. After that, BLACK CLOUD and C.I.B. had sexual intercourse. BLACK CLOUD's penis was inside of C.I.B.'s vagina. While he was having sex with C.I.B., BLACK CLOUD stated that it did not feel right to him. BLACK CLOUD stated it did not feel right because C.I.B. was too young. After he had sex with C.I.B. for five (5) or ten (10) minutes BLACK CLOUD stated he stopped. BLACK CLOUD went on to state that he was aware that C.I.B. was underage when he had sex with C.I.B.

See Docket No. 1 (capitals in original).

FBI Agent Gasper and FBI Agent Chad Coulter testified regarding their interview with Black Cloud. The FBI agents testified that they interviewed Black Cloud on January 19, 2011 at the Ruth Meier's Hospitality House in Bismarck, North Dakota. See Exhibit Nos. 1-5 (which depict the area where the interview took place at the Ruth Meier's Hospitality House). When the FBI agents arrived at Ruth Meier's Hospitality House they identified themselves to the desk attendant and asked to speak with Black Cloud. The desk attendant led the FBI agents to an office, then brought Black Cloud to speak with them. The agents asked Black Cloud if he would speak with them, told him that he did not have to speak with them, and told him that he was not under arrest. Black Cloud agreed to speak with the FBI agents and they entered the office and closed, but did not lock, the door. Black Cloud was not handcuffed or physically restrained before, during, or after the interview. Black Cloud sat near the door, and the FBI agents did not block the exit. The agents testified that Black Cloud did not ask to leave and was not prevented from leaving the office. Black Cloud also wrote out a handwritten statement during the interview. See Exhibit Nos. 6 and 7. Black Cloud was not arrested following the interview. The FBI agents concede that Black Cloud was not advised of

his rights under *Miranda*. The record reveals that at the onset of the interview Black Cloud asked whether he needed a lawyer.

On April 19, 2011, Black Cloud filed a motion to suppress evidence of the statements he made to the FBI agents and a written statement he provided to the agents. See Docket No. 25. Black Cloud contends that he was in custody during the interview on January 19, 2011, and that the failure to advise him of his *Miranda* rights violated his rights under the Fifth and Sixth Amendments. Black Cloud further contends that the FBI agents threatened him that, if he did not provide a written confession, more serious charges would be filed against him. The FBI agents deny threatening Black Cloud with more severe charges. The Government contends that *Miranda* warnings were unnecessary because Black Cloud was not in custody during the interview.

## II.     LEGAL DISCUSSION

Law enforcement officers must administer *Miranda* warnings whenever a suspect is "taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning." Miranda v. Arizona, 384 U.S. 436, 478-479 (1966). A person is in custody when he is either formally arrested or his freedom of movement is constrained to a degree equivalent with formal arrest. United States v. Brave Heart, 397 F.3d 1035, 1038 (8th Cir. 2005). The *Miranda* custody test is an objective test; two discrete inquiries are essential: (1) the circumstances surrounding the interrogation, and (2) given those circumstances, whether a reasonable person would have felt free to terminate the interrogation and leave. Yarborough v. Alvarado, 541 U.S. 652, 663 (2004) (citing Thompson v. Keohane, 516 U.S. 99, 133 (1995)). In Berkemer v. McCarty, 468 U.S. 420, 442 (1984), the Supreme Court affirmed that an objective test

is preferable to a subjective test because under the objective analysis the police do not have the burden of anticipating the frailties or idiosyncrasies of every person whom they question.

It is well-established in the Eighth Circuit that the totality of the circumstances must be examined and that six common indicia of custody are to be considered in determining whether an individual was held in custody:  (1) whether the suspect was informed during the interview that the questioning was voluntary, that he could ask the officers to leave, or that he was not considered under arrest; (2) whether the suspect possessed unrestrained freedom of movement during questioning; (3) whether the suspect voluntarily acquiesced to official questioning or initiated contact with authorities; (4) whether strong arm tactics or deceptive stratagems were employed during questioning; (5) whether there was a police-dominated atmosphere; and (6) whether the suspect was placed under arrest at the termination of the questioning.  United States v. Griffin, 922 F.2d 1343, 1349 (8th Cir. 1990).  "The first three indicia are mitigating factors which, if present, mitigate against the existence of custody at the time of questioning.  Conversely, the last three indicia are aggravating factors which, if present, aggravate the existence of custody."  United States v. Axsom, 289 F.3d 496, 500-01 (8th Cir. 2002).

The Eighth Circuit does not require that the *Griffin* factors be followed ritualistically in every case.  United States v. Czichray, 378 F.3d 822, 827 (8th Cir. 2004).  "When the factors are invoked, it is important to recall that they are not by any means exclusive, and that 'custody' cannot be resolved merely by counting up the number of factors on each side of the balance and rendering a decision accordingly."  Id.  The  most obvious way to demonstrate that a person is not in custody is to tell him that he is not in custody and that he may terminate the questioning at any time.  Id. at

826; Brave Heart, 397 F.3d at 1039. The Court will use the *Griffin* factors as a framework for analysis and discuss each one in turn.

### A. WHETHER THE SUSPECT WAS INFORMED DURING THE INTERVIEW THAT THE QUESTIONING WAS VOLUNTARY, THAT HE COULD ASK THE OFFICERS TO LEAVE, OR THAT HE WAS NOT CONSIDERED UNDER ARREST

Black Cloud contends that the FBI agents did not inform him that he was free to leave and not under arrest prior to the interview. The FBI agents testified that they asked Black Cloud to speak with them, told him that he did not have to speak with them, and told him he was not under arrest. The Court finds the FBI agents' testimony to be consistent and credible. The Court finds that the first mitigating factor exists which weighs in favor of a non-custodial setting for *Miranda* purposes.

### B. WHETHER THE SUSPECT POSSESSED UNRESTRAINED FREEDOM OF MOVEMENT DURING QUESTIONING

The second indicia of custody is whether the suspect possessed unrestrained freedom of movement during the questioning. Black Cloud argues that he did not have unrestrained freedom of movement during the interview. The FBI agents testified that the interview lasted anywhere from 45-90 minutes and it took place in an office at Ruth Meier's Hospitality House. FBI Agent Gasper estimated the interview was 45 minutes to one hour in length. Agent Coulter testified the interview was approximately 1-1½ hours in length. The door to the office was closed but not locked. Black Cloud sat near the door and the agents did not block the exit. Black Cloud was not handcuffed or physically restrained at any point before, during, or after the interview.

In <u>United States v. Black Bear</u>, 422 F.3d 658 (8th Cir. 2005), the Eighth Circuit explained that the defendant was not in custody during his interview with law enforcement, "While Black Bear did not have unrestrained freedom of movement during the interview because it occurred in a closed-door room in the police department, he nonetheless accompanied [the officer] to the room and was not handcuffed or restrained at any time during the interview." <u>Black Bear</u>, 422 F.3d at 662. In <u>United States v. Mottl</u>, the Eighth Circuit found that questioning conducted at the FBI headquarters was in a non-custodial setting even though the suspect was led through an electronically locked door behind bulletproof glass and questioned behind a closed door. <u>United States v. Mottl</u>, 946 F.2d 1366, 1367 (8th Cir. 1991). In this case, Black Cloud accompanied the FBI agents to a private office at the homeless shelter where he was living, and he was not handcuffed or restrained. The Court finds that the second mitigating factor exists which weighs in favor of a finding that Black Cloud was not in custody during the interview process.

**C. WHETHER THE SUSPECT VOLUNTARILY ACQUIESCED TO OFFICIAL QUESTIONING OR INITIATED CONTACT WITH AUTHORITIES**

The Eighth Circuit Court of Appeals observed in <u>Czichray</u>:

Whatever the <u>Griffin</u> court meant by "acquiescence," cf. <u>Webster's Third New International Dictionary</u> 18 (2002) ("passive assent or submission"); 1 <u>Shorter Oxford English Dictionary</u> 20 (5th ed. 2002) ("Silent or passive assent to, or compliance with, measures or proposals"), we conclude that the initiation of questioning by [law enforcement] in this case is not significant evidence of restraint on [the Defendant's] freedom of movement. Against a backdrop of repeated advice that he was free to terminate the interview, [the defendant's] decision not to terminate the interview and to allow the interview to proceed to its closing suggests an exercise of free will, rather than restraint to a degree associated with formal arrest. Cf. [<u>Yarborough v. Alvarado</u>, 541 U.S. 652, 655-59, 663-66 (2004)] (where police initiated two-hour interview of suspect in police station, did not tell suspect he was free to leave, and engaged in "pretty friendly conversation" during interview, state court was clearly "reasonable" in concluding that suspect was not in custody). This

is not a case where a suspect sought to exercise his option of terminating the interview, only to meet resistance from his interrogators.

Czichray, 378 F.3d at 828-29.

In this case, the FBI agents initiated contact with Black Cloud and he agreed to speak with them. At no time did Black Cloud refuse to answer questions or ask to leave. The Court finds that Black Cloud voluntarily acquiesced to questioning by FBI Agents Gasper and Coulter. The Court further finds that the third mitigating factor is present and weighs in favor of a finding that Black Cloud was not in custody.

### D. WHETHER STRONG ARM TACTICS OR DECEPTIVE STRATEGEMS WERE EMPLOYED DURING QUESTIONING

Black Cloud contends that he was threatened with more serious charges if he did not provide a written statement to the FBI agents. Both agents deny that they ever threatened Black Cloud in any manner. The Court finds the FBI agents' testimony to be consistent and credible.

In addition, the alleged threats made by the FBI agents are immaterial to whether Black Cloud was in custody during the interview. In Czichray, the Eighth Circuit discussed the affect of threats by law enforcement. The defendant was interviewed by FBI agents during an investigation for health care fraud. Czichray, 378 F.3d at 825. During the course of the interview, the agents told the defendant that "they would 'light up his world,' and also suggested that if he did not cooperate, then they could use the power of the FBI to pressure insurance companies to withhold payments from his business." Id. The Eighth Circuit stated that "some degree of coercion is part and parcel of the interrogation process and [] the coercive aspects of a police interview are largely irrelevant to the custody determination except where a reasonable person would perceive the coercion as

7

restricting his or her freedom to depart." Id. at 829 (quoting United States v. LeBrun, 363 F.3d 715, 721 (8th Cir. 2004) (en banc)) (alteration in original). The Eighth Circuit explained further:

> If the FBI agents misled Czichray by exaggerating their ability to control the conduct of private insurance companies (or if they really had the power to dictate non-payment of private insurance payments), then their statements might be one of many factors relating to the voluntariness of any admissions, but they would have little or no bearing on whether Czichray's freedom of movement was restrained for purposes of the Miranda custody analysis. Cf. Oregon v. Mathiason, 429 U.S. 492, 495-96 (1977) ("Whatever relevance [the officer's false statement during questioning] may have to other issues in the case, it has nothing to do with whether respondent was in custody for purposes of the Miranda rule.").

Id. at 830.

If the FBI agents had threatened Black Cloud that he would face more serious criminal charges if he did not provide a written statement, those threats may be relevant to the voluntariness of his confession, but not whether he was in custody at the time of the interview. The FBI agents did not employ psychological ploys, deceptive stratagems, or strong arm tactics during the questioning of Black Cloud. The Court finds that this aggravating factor is absent and this weighs in favor of a finding that Black Cloud was not in custody during the interview.

### E.  WHETHER THERE WAS A POLICE-DOMINATED ATMOSPHERE

Regarding the fifth *Griffin* factor, Black Cloud contends, "[A]lthough occurring at the Ruth Meier's House, two law enforcement officials were present and clearly the questioning was dominated by the police." See Docket No. 26. In United States v. Ollie, 442 F.3d 1135 (8th Cir. 2006), the Eighth Circuit discussed the relevance of the location of the interview:

> [W]e . . . find that the interview took place in a police-dominated atmosphere and that this atmosphere would have restrained a reasonable person's movements. In contrast to Axsom, where the suspect was interviewed at home, in this case the police questioned Mr. Ollie at the police station. It is true that an interview is not

> custodial simply because it occurs at the station house. [Oregon v. ]Mathiason, 429 U.S. [492, 495 (1977)]. But if the fact that questioning taking place on a suspect's "home turf" cuts against a finding of custody, see United States v. Rorex, 737 F.2d 753, 756 (8th Cir. 1984), then the converse must also be true: Interviews taking place on the police officers' "home turf" are more likely to be police-dominated. Here, Mr. Ollie's parole officer ordered him to meet with Chief McNeill. Once he arrived, Mr. Ollie was led to a small conference room where he sat alone with the police chief, a man considerably larger than himself.

Ollie, 442 F.3d at 1139.

The Court notes that the interview of Black Cloud did not take place at the FBI office nor at any law enforcement headquarters, but rather in a private office at the homeless shelter where Black Cloud lived in Bismarck, North Dakota. Neither of the FBI agents was dressed in uniform. Neither of the agents exposed their weapons. The location of the interview was not a police-dominated environment. The fact that two FBI agents conducted the interview does not lead to the conclusion that the atmosphere was police-dominated. The evidence reveals that the FBI agents treated Black Cloud in a respectful manner and the interview was not lengthy. The Court finds that the second aggravating factor is absent in this case which weighs in favor of a non-custodial setting.

### F. WHETHER THE SUSPECT WAS PLACED UNDER ARREST AT THE TERMINATION OF THE QUESTIONING

The remaining factor of a *Griffin* custody analysis is whether the suspect was arrested. It is undisputed, and Black Cloud concedes, that he was not arrested after the interview was completed on January 19, 2011. The Court finds that the third aggravating factor is also non-existent. This finding weighs in favor of a non-custodial setting.

### III.     CONCLUSION

In considering each of the *Griffin* factors and all of the facts and circumstances surrounding the interrogation, the Court finds that a reasonable person in Black Cloud's position would have felt free to terminate the interrogation and leave. The defendant had unrestrained freedom during the interview. The Court finds that Black Cloud was not held in custody at the time of the interview at the Ruth Meier's Hospitality House on January 19, 2011. Based on the totality of the circumstances, the Court further finds that Black Cloud was informed at the onset of the interview that he was not in custody, that he was not under arrest, and that he would not be arrested following the interview. The interview was relatively short and it appeared Black Cloud was treated in a professional and respectful manner by the FBI agents who conducted the interview. A reasonable person would have felt free to terminate the interview and leave under the circumstances. Accordingly, Black Cloud's Motion to Suppress Evidence (Docket No. 25) is **DENIED**.

**IT IS SO ORDERED**.

Dated this 1st day of June, 2011.

*/s/ Daniel L. Hovland*
Daniel L. Hovland, District Judge
United States District Court